Welch,- J.
In support of the demurrer, counsel for defendants contend:
I. That the covenant as to the mode of revaluing the demised premises every fifteen years, as a basis for fixing the annual rent, is a personal covenant between the original parties, the lessor and the lessee, and does not run with the land, so as to confer any rights or liabilities upon the assignee of the reversion and the assignee of the lease; and even if it is a covenant running with the land, that by the express words of the covenant the “ parties,” and not the parties or thei/r assigns, are to select the appraisers; and that therefore any appraisement made by men selected by or at the instance of the assignees of the original parties, is invalid.
We think the covenant regarding the mode of revaluing *74 the premises, equally with the covenants for revaluation, and for payment of a rent based upon the valuation, runs with the land. The three are inseparably connected, and reflect upon each other. The amount of the valuation might well be supposed to depend somewhat upon the manner of its being procured. The terms of renewal, at the end of ninety-nine years, would also be fixed by the valuation to be made at that time; and surely the covenant to renew is inherent. The object of the parties seems to have been to devise a self-executing scheme, and thus avoid the necessity of a lawsuit, and the danger of an expiration of the lease. It was a covenant which tended to support the estate, and affected its value, and which, therefore, they might well intend and declare to be inherent, and not collateral; and that they did so intend, we can, in view of the whole instrument, and of the nature of the estate demised, have no doubt whatever.
A principal reason rendered for holding this to be a collateral covenant is, that the original lessee continues liable for rents after his assignment. It would be a strange proceeding, and unjust to him, it is said, that he should be bound by a-valuation in which he could take no part, while his assignee who procured or assented to it might assign to an ii’responsible person the next day after, and avoid the payment of rent.
If it be true that the original lessee still remains liable for rents, perhaps it would be a sufficient answer to say, that by the assignment the lessee has made the assignee his agent to act for him in that behalf; and also to say, that there would be at least equal injustice in permitting a party with a mere nominal liability for rent, which is amply secured by the estate of the tenant, to. destroy the estate by an exorbitant increase of rents. Upon either construction, therefore, injustice to one party or the other seems unavoidable. In either case one party may fix the amount of rent, and the other party be compelled to pay it.
But is not the plain way out of this dilemma to be found in denying the continuing liability of the lessee ? It is simply a question of intention. Could the parties have intended such continuing liability, or the continuing right of the lessor *75 to control the rate of rents ? In other words, could they have intended either of the unjust results referred to — the fixing of the rent by either party, and its payment by the other % We think not. The nature of the estate granted forbids any such construction. For all substantial purposes, it is a leasehold estate in name and in form only. The lessor, in effect, parts at once with his entire estate, for a stipulated consideration in money, payable in specified instalments, and secured by a lien upon the land; and the lessee takes the entire estate, an estate of inheritance, subject only to the payment of the money. In form merely is it a chattel; it is in fact an estate in fee. Is it not a mistake, then, to hold, that such an estate is subject to all the incidents of an actual estate for a limited term of years ? One by one it has been found necessary, at least in Ohio, to deny these incidents in their application to permanent leasehold titles. What is called an assignment of such a lease, is in fact a sale of the land subject to the payment of money, under the name of rent. We are bound to conclude that the lessor intended to trust to the land and its owner, and not to the lessee, for his security. He could not have expected the lessee to live forever, or even for ninety-nine years; and the latter could not have intended to make promises so far in the future. The parties contemplated “ improvements ” upon the land, and the rent reserved was a mere ground rent. The lessor might, therefore, well trust to the land alone for his pay. No prudent man would make a lease running forever, unless he were willing to trust to the land alone. The personal liability of the best of lessees would be no security at all, and no man of sense would part with his estate upon any such consideration. Nor, on the other hand, is it reasonable to suppose, that in case of assignment by the lessee, which, it is admitted, was contemplated by the parties, it was intended that one man, the assignee, should be the owner of the land, and another, the original lessee, should fix the amount of rent for which it was liable. Moreover, if we are to regard the renewal at the end of each ninety-nine years, as a new lease, which seems to be the view of counsel, what assurance had the lessor that the new lessee would be *76 a responsible person ? To our minds it is quite clear that the parties never contemplated the continuing interest or liability of the original parties, or their continuing control'over the matter. The fact that the lease they made, and the acts to be done under it, were to outlast the life of any natural person, is a complete negative to any such idea. It is toue, that after the death of the parties a court of chancery could interfere, and do for them what they might do if alive. But the question is not what might a court of chancery do, but what did the parties intend? They evidently intended a permanent self-adjusting scheme, that should steer clear of courts. They intended the owners to be the controllers. They intended that the appointments of appraisers should go fmri passu with the valuations, and the payments of rent, and should be equally permanent with them. All three of these covenants — to pay rents, to have appraisements, and to appoint appraisers — were to outlast the term, of ninety-nine years, and were all to be called into requisition in determining the terms of renewal — with which renewal it is conceded the lessee had nothing to do.
I do not say that a similar interpretation would apply in all cases of permanent leases. It is, of course, competent for the parties, by express words, or otherwise, to rebut the implication, and indicate an intention to continue the rights and liabilities of the original parties. I do not undertake to say, for instance, that the mere fact of the lessee being a corporation, with power of perpetual succession, might not rebut the implication. We confine our decision to the case made, — the case of a perpetual lease made between natural persons; and I have x’eason to kixow, that oxxr ixxtex-pretation is the rntex'pretatioh pxxt xxpoxx sxxch leases by those wlxo deal in them, axxd by the commuxxity where they are xxsed. I refer particxxlarly to the Ohio University lands, which are held by this kind of temxre.
II. Bxxt it is claimed, ixx the second place, that the jxxdges of the court of common pleas, as ox’gaxxized under the px’esent coxistitution, are not the officers designated in the lease, and had no authority to appoint the appraisers. They ave not *77 the same in number, it is said, or appointed in the same manner, as the judges of the court of common pleas of 1836, and are not the successors of the latter.
This provision in the lease should be liberally construed to effect its evident object, which was, to fix a sure method of adjusting the amount of the rent, in case of disagreement. "We may well suppose that the judges of one court would have answered the purposes of the parties, as well as another. The particular object was, not to name the best judges, but to name such as could always and certainly be had, so that there should never be a failure. It seems to us, therefore, although it may not be strictly true in every sense, that the present court of common pleas is the successor of the court of common pleas under the old constitution, that the judges of the court as now organized ought to be held as coming within the province of this provision in the lease, and that the appointment was well made.
III. Another objection is that it is only in case of “ disagreement ” by the parties that the judges are authorized to appoint, and that there was no disagreement in fact.
The petition alleges that the plaintiff applied to the defendants and requested them to unite in the appointment of appraisers, but that the defendants refused to do so. This was surely a “ disagreement,” within the meaning of the contract. They did not agree, and could not agree, upon the appointment of appraisers. The one desired the appointment of three appraisers, and the other desired the appointment of none, and they mutually made their minds known to each other to that effect. This was surely a disagreement within the meaning of the lease.
IY. The remaining question made upon the demurrer is, whether it was necessary, in order to the validity of the valuation, that the parties in interest should have an opportunity to be heard by the appraisers, before it was made. We think, with the court below, that it should be made to appear that such opportunity was afforded, or that it was not reasonably practicable. In view of the importance of the interests to be affected, and the length of time for which the appraisement *78 is to last, it seems to us it ought not to be made in the absence of the parties, and without consulting them, where it is reasonably practicable to give them a heai'ing. In so holding it is unnecessary to say whether the proceeding is to be regarded as an arbitration or not. It is surely not in the nature of an arbitration, so far as regards any supposed right of the parties or privies, to revoke the authority of the appraisers. But we think it is a proceeding of that importance, and so liable to possible abuse, fraud, or mistake, that the parties to be affected thereby should have an opportunity to be heard. That such opportunity was afforded to the defendants in the present case, does not appear by the plaintiff’s petition, and the demurrer thereto was, therefore, properly sustained.

Judgment affirmed.

Brinkerhoff, C.J., and Scott, White, and Day, JJ., concurred.